**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **GO BEYOND, LTD.;**<br>**BRANDI MARINO, Individually,**<br>**and derivatively on behalf of**<br>**BEYOND PEDALING, LLC,**<br>**a Texas Limited Liability Company,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**KERRY PETERSON,**<br>**KELSEY HOWARD, and**<br>**BEYOND PEDALING II, LLC,**<br>**a Texas Limited Liability Company,**<br><br>    **Defendants.** | **CIVIL ACTION NO. 4:15-CV-312** |

**PLAINTIFFS' VERIFIED ORIGINAL COMPLAINT AND**
**APPLICATIONS FOR TEMPORARY RESTRAINING ORDER,**
**AND TEMPORARY AND PERMANENT INJUNCTIONS**

Plaintiffs Go Beyond, Ltd. ("Go BEYOND") and Brandi Marino ("Marino"), on behalf of

herself individually and in the alternative, derivatively on behalf of Plaintiff Beyond Pedaling,

LLC ("BEYOND Pedaling") (collectively, "Plaintiffs"), bring this action against Defendants

Kerry Peterson ("Peterson"); Kelsey Howard ("Howard"); and Beyond Pedaling II, LLC ("BPII")

(collectively, "Defendants") for equitable and legal relief.

## I.    NATURE OF THE CASE

1.     This is an action at law and in equity for, among other claims, trademark infringement,

trade secret theft, breach of fiduciary duty, false advertising, and unfair competition, arising from

Defendants' unauthorized and unlicensed use of Go BEYOND's trademarks and illegal access and

theft of Plaintiffs' trade secrets and other confidential and proprietary information.  Defendants

used the trademarks and other confidential proprietary information to create and launch a business that competes with BEYOND Pedaling—a cycling fitness studio company that is part of the BEYOND-brand of fitness studios founded by Plaintiff Brandi Marino.

2.      Go BEYOND is a limited partnership, one hundred percent (100 %) owned and controlled by Marino, which is the exclusive owner of the logos and trademarks of the BEYOND-brand of fitness studios.  The marks owned by Go BEYOND include the "BEYOND name" shown below:



as well as the "GOBEYOND mark" shown here:



and the upside-down "Y logo" shown here:



3.      The above marks are utilized by Ms. Marino in relation to her BEYOND line of fitness studios in both advertising and signage for the studios and are affixed to clothing and other merchandise related to the fitness studios.  Go BEYOND is the exclusive owner of all right, title, and interest in the U.S. Trademark Registration Nos. 4,206,105; 4,571,180; and 4,612,529, attached hereto respectively as Exhibits A, B, and C.  Together the three (3) marks constitute the "BEYOND Marks."

4.      Ms. Marino's BEYOND line of studios offers for sale high-quality athletic clothing and fitness-related products, as well as fitness classes at its four (4) locations.  The BEYOND Marks appear on virtually all of the BEYOND line of studios' clothing and other products and are prominently used and displayed outside and within its studio locations.  The BEYOND Marks are closely and uniquely associated with the BEYOND brand and Ms. Marino, and have come to symbolize the high-quality, customer-centric, and innovative fitness experiences and athletic wear that consumers can expect from BEYOND and Ms. Marino as the source of such products and services.  Accordingly, Go BEYOND, the BEYOND line of studios, and Ms. Marino enjoy strong consumer loyalty, recognition, and goodwill in the BEYOND Marks.

5.      Go BEYOND's claims in the present action arise from Defendants' unauthorized advertisement, promotion, marketing, and offering for sale of services related to a soon-to-open fitness studio in The Shops at Legacy in Plano, Texas, by Defendants bearing unauthorized reproductions of the BEYOND Marks and claiming to be an expansion of the BEYOND cycling studio offering called BEYOND Pedaling—despite a total absence of BEYOND or Ms. Marino's ownership, involvement in, or until recently, awareness of the new venture.  On information and belief, the new studio will operate under Defendant BPII, which is owned by Defendant Peterson and/or Defendant Howard.

6.      Plaintiffs' claims likewise arise from Defendants' unauthorized use of the computer systems, employees, and other resources at BEYOND Pedaling to design, organize, and market to BEYOND customers, on information and belief, Defendant BPII's new cycling studio in Plano, Texas.  Defendant BPII is not affiliated or associated with Ms. Marino, Go BEYOND, or the BEYOND-branded fitness studios.  Defendants Howard and Peterson are unfortunately associated with the legitimate BEYOND Pedaling studio in Dallas, Texas, that Ms. Marino created—

Defendant Howard is the studio's manager and Defendant Peterson is a fifty percent (50%) owner in Beyond Pedaling, LLC with Ms. Marino.  Nevertheless, no Defendant has permission from Go BEYOND, Ms. Marino, or BEYOND Pedaling to use any of the BEYOND Marks or any other intellectual property or resources belonging to Go BEYOND, Ms. Marino, and/or BEYOND Pedaling.  Rather, Defendants are blatantly exploiting the BEYOND Marks and the property and resources of Ms. Marino and BEYOND Pedaling for their own commercial gain, on information and belief, intending to confuse and deceive the public by drawing on Ms. Marino's, Go BEYOND's, and the BEYOND line of studios' goodwill in the marketplace.  By offering for sale the cycling fitness services and by advertising the location as an expansion of BEYOND Pedaling, Defendants intend to, have, and are likely to, cause confusion and to deceive consumers and the public regarding the source of Defendants' services and merchandise, all to the detriment of Plaintiffs and the public.

7.      In support of Plaintiffs' Verified Original Complaint and Applications for Temporary Restraining Order, and for Temporary and Permanent Injunctions, Plaintiffs allege knowledge with respect to their own action and otherwise on information and belief as follows:

## II.      PARTIES

8.      Plaintiff Go Beyond, Ltd. is a Texas limited partnership, with its principal place of business in Dallas, Dallas County, Texas.  Go BEYOND is the exclusive owner of all right, title, and interest in the BEYOND Marks.  Plaintiff Marino ultimately owns and controls Go BEYOND.

9.      Plaintiff Brandi Marino is an individual residing in Dallas, Dallas County, Texas.  Ms. Marino is the founder of the BEYOND line of fitness studios and merchandise and is regarded as a pioneer in providing innovative boutique studios for group exercise in North Texas and beyond. She is a fifty percent (50%) owner/member in Plaintiff BEYOND Pedaling.

10.      Plaintiff Beyond Pedaling, LLC is a Texas limited liability company, organized and formed on or about September 1, 2011.  A true and correct copy of its formation documents are attached hereto as <u>Exhibit D</u>.  BEYOND Pedaling's principal place of business is 6814 Snider Plaza, University Park, Texas 75205.  BEYOND Pedaling has no managing member or officers and is thus a "member managed" limited liability company.  BEYOND Pedaling is a closely-held limited liability company under TEX. BUS. ORG. CODE § 101.463(a).  The only two (2) members of BEYOND Pedaling are Plaintiff Brandi Marino and Defendant Kerry Peterson, with each owning an equal fifty percent (50%) member interest.  No member owns a majority or controlling interest in BEYOND Pedaling.  Plaintiff Marino contends that under TEX. BUS. ORG CODE § 101.463(c), Plaintiff BEYOND Pedaling is not necessary to this action, as justice requires in such a small closely-held LLC, that this action be treated as a direct action by Ms. Marino; however, BEYOND Pedaling has been added in the alternative should the Court decide otherwise.

11.      Defendant Kerry Peterson has, at all times relevant to this Complaint, resided at 4320 Caruth Boulevard, University Park, Texas 75225.  Peterson is a member of the State Bar of Texas and is a partner at Miller, Egan, Motler & Nelson LLP, located at 2911 Turtle Creek Boulevard, Suite 1100, Dallas, Texas 75219.  Defendant Peterson owns a fifty percent (50%) membership interest in Plaintiff BEYOND Pedaling.  Since March 2015, Defendant Peterson has been and is the managing member of Defendant BPII and, on information and belief, holds a significant ownership/membership interest therein.  Defendant Peterson can be served with process at her residence or at her law office.

12.      Defendant Kelsey Howard has, at all times relevant to this Complaint, lived at 8749 Southwestern Boulevard, Apartment 11203, Dallas, Texas 75206.  Howard can be served with process at this residence.  From on or about October 2013, Defendant Howard has been employed

by BEYOND Pedaling as the manager of BEYOND Pedaling's only location, a cycling studio located at 6814 Snider Plaza, University Park, Texas 75225. Defendant Howard is not a member of BEYOND Pedaling and holds no membership interest therein. On information and belief, Defendant Howard has participated and continues to participate in the ownership, organization, management, and strategic planning for the business of BPII during her employment with BEYOND Pedaling.

13.     Defendant Beyond Pedaling II, LLC is a limited liability company, organized and formed under the laws of the State of Texas, in or about March 2015. Defendant Peterson formed BPII and is its Managing Member and, on information and belief, maintains a significant ownership in it along with Defendant Howard. Defendant BPII may be served with process by serving its Managing Member and registered agent, Defendant Kerry Peterson at 2911 Turtle Creek Boulevard, Suite 1100, Dallas, Texas 75219.

### III.     JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over all Defendants because they are individual Texas citizens/residents and/or Texas limited liability companies. Moreover, jurisdiction is proper because the causes of action asserted in this case arose from or are connected with purposeful and tortious acts committed by Defendants, in whole or in part, in Texas, and specifically, in part in the Eastern District of Texas, Sherman Division, and the Defendants have committed tort(s), directly and indirectly, in whole and in part, that caused substantial harm in Texas.

15.     Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial amount of the acts or omissions giving rise to this case occurred and have effect in Plano, Collin County, Texas, which is within the Sherman Division of the Eastern District of Texas.

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that certain of the claims asserted herein arise under federal law.   The Court has exclusive subject matter jurisdiction over the claims under the Lanham Act asserted herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).  Further, the Court has supplemental jurisdiction over the claims arising out of the violations of statutes and common laws of the State of Texas pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts; and has jurisdiction pursuant to 28 U.S.C. § 1338(b) over claims arising under the common law of the State of Texas.

## IV.     SUMMARY OF THE CLAIMS

17.     This is a case where a small-business woman and innovator in the North Texas fitness studio business shared her knowledge, property, and good name with people who chose to repay her goodwill by stealing from her.  The actions described in this case involve an abuse of trust, a complete abdication of fiduciary duties and legitimate corporate governance, and a brazen misappropriation and misuse of confidential business and trade secret information and other property and resources, including federally registered trademarks, by Defendants Peterson and Howard—all for the benefit of themselves and, on information and belief, Defendant BPII.

18.     Defendants are using Go BEYOND's federal trademarks with no license, falsely advertising services to consumers in Texas and likely beyond, have been and are abusing their positions of trust and responsibility, essentially choosing to ignore the rights and obligations owed to BEYOND Pedaling and its half-owner and founder of the BEYOND-brand of fitness studios and merchandise, Ms. Marino—on information and belief, all in an attempt to steal from a concept they did not invent and feather their own nest from the ideas and property of another.  The fact that

one of these actors is an active member of the State Bar of Texas and has a higher ethical duty than the typical business person makes this violation of fiduciary duties, violation of federal trademark law, and theft of property and opportunity all the more troubling.

## V.      FACTS UNDERLYING ALL CLAIMS

### A.      BRANDI MARINO—BEYOND AN IDEA

19.      In the early and mid-2000's, Ms. Marino was living in Los Angeles and was largely frustrated with her job in the world of pharmaceutical and medical sales.  While she enjoyed gaining in-depth knowledge of anatomy and the science involved in the human body and its function and fitness, she found the industry not as personally client-focused as she wanted.  She longed for a more personal connection with her customers.  Thus, Ms. Marino decided to make some changes and began looking for an opportunity to blend her business acumen with her passion for fitness and to find ways to be innovative in developing engaging ways for people to exercise.

20.      As she began to redirect her career path towards the fitness industry, she found that the industry was largely saturated and knew somehow she would have to find a niche in which to launch her dream business.  Around this same time, Ms. Marino became intrigued with the idea of boutique fitness centers.  She had noticed that while the big-box gyms and general workout facilities existed in large numbers in almost every market, there seemed to be segments where smaller, focused, and more personal boutique-style exercise studios could thrive.  Time would prove her right.

### B.      DALLAS, TEXAS—BEYOND BRAND BEGINS

21.      Between 2007 and 2009, Ms. Marino traveled frequently between Dallas and her home in Los Angeles.  During her time spent in Dallas, she noted that, like many markets she had looked at, Dallas had a lot of general exercise facilities with the typical offerings of fitness classes, cycling,

treadmills, etc.  But, the North Texas market seemed to really lack any real presence of the boutique-style fitness studio offerings that she found personally intriguing and thought could be successful in finding a niche with fitness consumers.

22.     In 2009, Ms. Marino moved to Texas and began to work in earnest on her concept.  Ms. Marino felt that in order to distinguish her line of studios from the masses and to draw real interest by fitness consumers, she needed to not only offer a creative manner of exercising, but that the studios themselves had to stand out as a brand, be distinctive, and establish a reputation as a source for high-quality and personal services and products.  She wanted to build a brand and a client experience that in the world of fitness was distinguished by innovation, quality, and making her clients feel not like a customer, but more like a valued member of a small exercise community. She had always believed that the people who do best in life go above and beyond what is required. In the world of fitness, she wanted to go above and beyond the typical gym experience in areas of customer service environment and the types of classes and instruction her clients were to receive and to give clients the opportunity to be pushed above and beyond their artificial fitness limits to new levels of health.  Hence, the concept behind the BEYOND brand was born.

23.     In the spring of 2010, Ms. Marino saw her dream and vision become a reality with BEYOND Park Cities, LLC (formerly known as BEYOND Pilates, LLC) ("BEYOND Park Cities").[1]  With a loan, Ms. Marino purchased a license from SPX Fitness for a Pilates concept for equipment and purchased the Megaformer equipment clients use during classes.  BEYOND Park Cities opened in May 2010, as Ms. Marino's first studio, located on Lovers Lane in Dallas.

---

[1] Beyond Pilates, LLC changed its name to "Beyond Park Cities, LLC," on October 30, 2012, by filing a Certificate of Amendment to the Certificate of Formation with the Texas Secretary of State.

**PLAINTIFFS' VERIFIED ORIGINAL COMPLAINT AND**
**APPLICATIONS FOR TEMPORARY RESTRAINING ORDER,**
**AND TEMPORARY AND PERMANENT INJUNCTIONS**                              **PAGE  9**

24.     In 2010, Ms. Marino began offering fitness services and eventually clothing and fitness-related merchandise bearing the BEYOND logo and "Y Logo"[2] and began using the GOBEYOND mark in April 2011.  The BEYOND Marks are federally-registered marks and the registrations for the BEYOND Marks are valid, subsisting, and in full force and effect.  Additionally, Go BEYOND and/or Ms. Marino has common law trademark rights in the BEYOND Marks for use in the fitness services and athletic apparel and merchandise markets.

25.     Ms. Marino and her BEYOND companies have carefully controlled the quality, standards, and look and feel of the BEYOND-brand of studios and merchandise since inception, with Ms. Marino being involved in almost every area of design, training, and execution of BEYOND-branded fitness studios and associated merchandise to ensure a consistent and high-quality customer experience with both the studios and their merchandise and/or services.

26.     Each year Ms. Marino and the BEYOND studios spend tens of thousands of dollars in marketing and promoting the BEYOND Marks and BEYOND-branded studio services and merchandise, and sell hundreds of thousands of dollars in services under the BEYOND name and goods bearing the BEYOND Marks.

27.     As a result of Ms. Marino and the BEYOND line of studio's exclusive and extensive use and promotion of the BEYOND Marks for many years, the BEYOND Marks have acquired enormous value and recognition in Texas and elsewhere throughout the U.S., all of which inures to the benefit of Ms. Marino and the BEYOND-branded studios.  Consumers, potential customers, and other members of the public not only associate the BEYOND Marks with exceptional service,

---

[2] Ms. Marino particularly liked her BEYOND Mark's upside down "Y" and backwards facing "N" because it is a reminder to her that sometimes you have to turn things upside down and around to get results.  And after all, it was results she wanted her clients to experience in reaching new levels of satisfaction with their exercise experience and new levels of personal fitness.

quality materials, and style approved by Ms. Marino/BEYOND, but also recognize that merchandise and/or studios bearing the BEYOND Marks originate exclusively with Ms. Marino/BEYOND.   Accordingly, the BEYOND Marks are symbols of Ms. Marino/BEYOND studio's quality, reputation, and goodwill and serve as instant source identifiers for Ms. Marino/BEYOND's products and services.

28.     As a part of her efforts to build this brand awareness and create secondary meaning for the BEYOND name and the BEYOND Marks, from 2010 to 2011, Ms. Marino tirelessly poured herself into providing a high-quality, intense, and fun group Pilates-class experience for her clientele and cutting edge, high-quality merchandise.   Ms. Marino worked night and day as she managed the business and marketing of BEYOND Park Cities and the BEYOND brand, researched and planned for new fitness concepts and techniques to keep her class offerings fresh, and located and designed new merchandise for use with the BEYOND Marks and brand, all while teaching as many as forty (40) classes per week—oftentimes having to sleep in her car between classes.

29.     In the years that followed, Ms. Marino consistently worked to extend the brand awareness of BEYOND through spending thousands of dollars on advertising and marketing efforts and, most importantly, via word of mouth from her satisfied clientele.   While Ms. Marino has focused her attention on keeping the BEYOND fitness studio offerings fresh and cutting edge for her clients, she has also never forgotten that customer experience is key to her business and brand.   To that end, she has personally trained instructors and written training materials to ensure that clients of BEYOND receive a consistent top-level, personal, and professional experience, as well as innovative fitness offerings to build and confirm the quality assurance and recognition of the BEYOND brand and the BEYOND Marks as indicating a source of a distinctive class of service and quality within the minds of consumers and giving the BEYOND Marks secondary meaning.

30.     Ms. Marino and the BEYOND line of studios are now regarded as market leaders in the boutique fitness-studio business and Ms. Marino is seen as a pioneer in bringing the group reformer workout to North Texas and delivering a tremendous level of customer service to the client and creating brand recognition and loyalty in her clients.  The BEYOND Marks are now plainly associated with Ms. Marino and the BEYOND line of studios and give consumers instant information about the quality of goods and services that bear the BEYOND brand/Marks and that those are goods or services originating with Ms. Marino, Go BEYOND, and the BEYOND line of studios.  Ms. Marino and her BEYOND studios have been recognized and lauded nationally, in magazine publications such as VOGUE and ELLE, as well as locally, on television news programs and in magazine publications, such as D Magazine, Fashion Dallas, Guide Live, Texas Style and Substance, Park Cities People, Dallas News, and Dallas Socials.  *See* promotional publications attached hereto as Exhibit E.  These recognitions and articles all give Ms. Marino high praise and equate Ms. Marino herself with the BEYOND brand and confirm the source identity of the BEYOND brand and its link to Ms. Marino's level of quality and innovation in the minds of consumers.  For example, one fitness publication wrote:



www.cassandra.co website, March 19, 2012.

Another magazine wrote this article, highlighting Ms. Marino and BEYOND Pedaling:

# TEXAS STYLE & SUBSTANCE
MUSINGS AND NEWS ABOUT DESIGN, CULTURE AND LIFESTYLE ACROSS THE LONE STAR STATE

ABOUT

SUBSCRIBE

FACEBOOK

CONTACT

LOVE TO READ...

The Texas Tribune: Main Feed

Simple Lovely

V.O.D.

IN THE PINK

style/SWOON

Life Content

Life in Travel

ARCHIVES

► 2013 (17)
► 2012 (108)
▼ 2011 (149)
  ▼ December (14)
    Everywhere: Blue Print Cleanse
    Austin: Spartan
    Everywhere: Emmanuelle Alt
    Dallas: Beyond Pedaling
    Juarez: Project Paz
    El Paso: Sara Beltran
    Houston: Miu Miu
    Houston: Sunday Riley Cosmetics
    Dallas: Khloe Kardashian-Odom
    Dallas: Arts & Letters Live
    Austin: Hayden Dunham

21 DECEMBER 2011
### DALLAS: BEYOND PEDALING

Holy smackers, I'm so excited! In just a few weeks we can all ring in the new year at Brandi Marino's newest exercise space, Beyond Pedaling Studio. You know Marino from her rear-end firming joint Beyond Pilates. Her classes have whipped countless softies into shape and now comes news of her cardio- and endurance-focused cycling studio.



Marino's new spot in Snider Plaza has 30 bikes and once it's opened, Beyond Pilates and Beyond Pedaling will have a joint booking system where you can choose which spot to work out in. Think about it: one place to tone and firm, one place to go into cardio overdrive. My Christmas present to myself? A 15-session package that I can use to transform my post holiday ass into shape.

POSTED BY KR AT 11:05 AM

*Texas Style and Substance*, December 21, 2011.

## C.  CYCLING—BEYOND GROWTH

31.     During the summer of 2011, Ms. Marino perceived a need for a free-standing indoor-cycling or "spin" studio.  While many mainstream gyms offered spin classes, there was no boutique offering in the market.  Ms. Marino formerly served as a spin-bike instructor during her time in Los Angeles and knew the popularity of the exercise concept.  Ms. Marino began to look at whether she could combine her BEYOND brand and the concept of the studio as a "community," but instead of offering group Pilates reformer classes, successfully offer spin-bike classes.  Ms. Marino

felt like the brand loyalty she had created with her clients would translate well into this new format, and because the BEYOND brand and BEYOND logo would identify Ms. Marino and her BEYOND line of studios as the source of the services and merchandise offered, it would give consumers a level of assurance and comfort about the consistent and innovative quality, experience, and personal service they could expect at such a studio.

32.     One issue for Ms. Marino was what she could call the new BEYOND offering.  She was already aware that "spin" and its variants were trademarks held by another company[3] and so she could not utilize that in naming the new concept without negotiating a license and paying licensing fees.  At that time, the front door of BEYOND Park Cities' Lovers Lane studio had a circle with a "BP" in the middle standing for BEYOND Pilates.  After thinking about how to link the concepts of indoor-cycling to her existing business, she had the idea that "BP" could also stand for BEYOND Pedaling, and so that could be used and a brand linkage established without offending anyone's intellectual property rights, but still conveying what this new concept would be.  Hence, "BEYOND Pedaling" was born to indicate to consumers the type of services offered (*e.g.*, cycling classes) while indicating the source of the goods and services would be Ms. Marino and the BEYOND line of studios she created.

**D.      DEFENDANT KERRY PETERSON—BEYOND A CLIENT**

33.     Defendant Peterson, a partner in the Dallas law firm of Miller, Egan, Molter & Nelson LLP, "uses litigation, restructuring and corporate counseling techniques to provide clients with business opportunities . . . " according to her lawfirm web bio.  As it turned out in 2014 and early 2015, on information and belief, Ms. Peterson chose to utilize her superior legal knowledge and bully-tactics to try and steal Ms. Marino's concept, misuse Go BEYOND's federal trademarks,

---

[3] "Spin" and its variants are owned by Mad Dog Athletics, Inc.

commandeer Ms. Marino's goodwill, and deprive her of access and control of a business she worked and paid to build.  But, in 2011, Ms. Peterson was merely a full-time lawyer who was also a BEYOND Park Cities client.

34.     As Ms. Marino was refining her idea of taking the BEYOND concept into the cycling studio business, she began to do some informal surveys of her existing clients to gather their thoughts and impressions on the idea.  One of the clients she spoke with during this period was Defendant Peterson.  Peterson was very interested and supportive of Ms. Marino's idea, as Peterson was a fan of the Fly Wheel brand of cycling studios in Atlanta and New York, and eventually talked Ms. Marino into allowing her to join in the new cycling venture.

35.     After some further discussion and thought, Ms. Marino and Defendant Peterson agreed to form a company together to operate the cycling studio with each contributing $75,000.00 and each getting as a result, fifty percent (50%) non-controlling interest in the company.  Being a lawyer, Defendant Peterson recruited another partner in her firm, Shane Egan, to do the legal work to formally create the new limited liability company on behalf of both Defendant Peterson and Ms. Marino.  Mr. Egan filed the formation documents with the Texas Secretary of State on or about September 1, 2011, creating BEYOND Pedaling, LLC.  According to the legal document filed by Mr. Egan, BEYOND Pedaling was not to have a managing member and was thus to be a closely-held, "member managed," Texas limited liability company with no member having majority or controlling interest.  *See* Exhibit D.

36.     At all times since its creation, Ms. Marino has held and owned her membership interest in BEYOND Pedaling and still holds that interest today.  BEYOND Pedaling is and remains a closely-held limited liability company under TEX. BUS. ORG. CODE § 101.463.

37.     Curiously, while Ms. Marino desired an operating agreement to govern BEYOND Pedaling's operations and management, she could never get Defendant Peterson to agree to one. Similarly, throughout its existence, Ms. Marino sought a licensing agreement for use of the BEYOND name and the BEYOND Marks by BEYOND Pedaling, but again, Defendant Peterson put her off.

38.     In addition to the above acts, Defendant Peterson showed a reluctance to participate in important initial events that seemed innocent at the time, but are now telling.  First, the space in Snider Plaza where the new studio would operate came available and a lease was prepared.  The landlord requested personal guarantees from the owners.  Ms. Marino signed, but Defendant Peterson, in what turns out to be a foreshadowing of events to come, refused to sign a guarantee. As she curiously put it, Defendant Peterson needed to keep her name off personal guarantees in case they opened other locations.  When Ms. Marino inquired further about this, Defendant Peterson told her it was "a legal thing" and brushed her off.  Knowing Defendant Peterson was the lawyer, and believing Defendant Peterson had no ill intent, Ms. Marino signed the lease as the sole personal guarantor and the establishment of BEYOND Pedaling's business began.  Notably, Ms. Marino remains personally liable as the sole guarantor on the lease for BEYOND Pedaling today.

39.     As BEYOND Pedaling readied for business, Ms. Marino was busy bringing her expertise and the BEYOND way of doing things to the new venture—a task she did not resent given that Defendant Peterson was still a full-time lawyer and frankly, had no experience in setting up a fitness studio at all or consistent with the BEYOND brand.  More importantly, Ms. Marino never asked for any additional compensation due to her providing her services in running this newly-formed venture with Defendant Peterson.

40.     Ms. Marino soon had the BEYOND Pedaling business ready to open both physically and with its online booking shared with BEYOND Park Cities on the BEYOND website.

41.     BEYOND Pedaling opened its doors and began classes in February 2012.

**E.     2012—BEYOND IMPROVEMENT**

42.     At the time it opened in early 2012, almost all BEYOND Pedaling's employees were existing employees of BEYOND Park Cities, having been trained to provide the BEYOND level of service and experience by Ms. Marino.  Thus, the staff and team for BEYOND Pedaling were in fact, the BEYOND Park Cities' staff who Ms. Marino asked to help aid in the new venture, even though it meant some hardship for her BEYOND Park Cities' studio.  Defendant Peterson did not assist in the opening and staffing of the studio, as she had no real experience in running an exercise studio, and of course, was still a full-time practicing lawyer with an active docket and travel schedule.

43.     Up to and following its opening, BEYOND Pedaling depended upon BEYOND Park Cities and Ms. Marino's market reputation, customer base, and advertising to help it draw customers to the new venture.  Ms. Marino's BEYOND Park Cities was operating with between sixty (60) and seventy (70) classes each week (taught by Ms. Marino or according to her methodology and training), and was continuing to grow.  At the same time, BEYOND Park Cities was operating as the mouthpiece and marketing conduit for BEYOND Pedaling.  And it was not just the website that was working for the new cycling studio; Ms. Marino was working to manage both studios, continuing to train instructors and desk personnel, and even taught cycling classes herself to establish, maintain, and extend the quality and service the BEYOND brand and BEYOND Marks meant for consumers—all with no additional compensation or distributions from BEYOND

Pedaling and without the cycling studio venture paying BEYOND Park Cities for any of its services, training, advertising, or goodwill.

44.     Another decision by Ms. Marino that supported and improved BEYOND Pedaling at the expense of BEYOND Park Cities (and added to the transparency of the business as a whole) was its financial management.  In 2012, Ms. Marino hired a point-of-sale ("POS") service called Mind Body Fitness to handle the closings of sales for all the BEYOND entities, including BEYOND Pedaling.  All online sales would go into a single BEYOND Park Cities Wells Fargo bank account. The sales for BEYOND Pedaling were then tallied and reported to both Ms. Marino and Defendant Peterson.  Once Defendant Peterson approved the transactions, the funds were moved from the BEYOND Park Cities Wells Fargo account to an account for BEYOND Pedaling.  All expenses for these services were paid by BEYOND Park Cities alone.

45.     In this same 2012-2013 period, when problems arose in the business of BEYOND Pedaling—whether customer-related or otherwise, it was Ms. Marino who was called in to solve them.  On information and belief, Defendant Peterson was not the source of solving problems and creating solutions when the business needed them, as she did not have the background or experience of Ms. Marino and frankly, it was Ms. Marino's BEYOND brand that was most at risk when there were issues.  Further, all the training of all BEYOND Pedaling employees was either done by Ms. Marino personally or done using programs and materials she developed to maintain the quality of goods and service consumers associated with the BEYOND brand and the BEYOND Marks.  *See* the BEYOND Pedaling Studio Instructor Manual attached hereto as <u>Exhibit F</u>.  Ms. Marino was and remains very protective of the BEYOND brand, the BEYOND Marks, and the quality and experience they represent in the fitness market, as consumers closely associate the

BEYOND Marks and brand with high-quality fitness concepts, experience, and merchandise of Ms. Marino's.

**F.    PETERSON'S 2013 ACTIVITIES AND HOWARD'S HIRING—BEYOND THE TRUTH**

46.    Defendant Peterson was in regular control of the books and records of BEYOND Pedaling by 2013.  While Ms. Marino realized Defendant Peterson had no real experience in the fitness industry and some questionable management issues, Ms. Marino still trusted Defendant Peterson and felt like her experience as an attorney would make a positive impact on the business side of BEYOND Pedaling.  Indeed, that's what Defendant Peterson sold her on in convincing her to go into business together.

47.    On or about March 26, 2013, Defendant Peterson filed the Texas Franchise Tax Public Information Report with the State of Texas for BEYOND Pedaling.  A true and correct copy of the 2013 Report is attached as Exhibit G.  In that Report to the State of Texas, Defendant Peterson falsely listed herself as the only member and gave herself the title of "Director" of BEYOND Pedaling, despite having never been either the sole member or a director.  On information and belief, this was the first of several false filings by Defendant Peterson with the State of Texas and the first of many untruths authored by Defendant Peterson related to BEYOND Pedaling.

48.    Ms. Marino was unaware of the apparent fraud on the State of Texas and continued to trust Defendant Peterson.

49.    In 2013, BEYOND Park Cities continued to grow at its original location on Lovers Lane. And, BEYOND Pedaling was enjoying some success at its nearby Snider Plaza studio.  In August 2013, Ms. Marino was able to open a third BEYOND location in the Preston Hollow neighborhood near the corner of Forest Lane and Preston Road in Dallas, which offered Pilates classes.  This new location was a step forward for the business and sought to place the business in a location

closer to an ever-growing area of its clientele.  The Preston Hollow location has proven to be very successful and the BEYOND-brand of fitness studios has gained an even larger following benefiting all the BEYOND-branded studios, including BEYOND Pedaling.   Through the advertising and marketing of the BEYOND location in Preston Hollow, the BEYOND Marks and brand were further solidified as being a source identifier for Ms. Marino's and the BEYOND line of studios' standards for quality and innovation for fitness services, experience, and products.

50.     In August/September 2013, Ms. Marino interviewed and hired Defendant Howard, who was a part-time attorney and client of BEYOND Pedaling.  Defendant Howard was enthusiastic and, while she lacked a background in fitness (other than as a client) and business, Ms. Marino found her to be bright, ambitious, and ready to learn.  Thus, Ms. Marino hired Defendant Howard as a part-time manager in September 2013, trained her, and eventually promoted her to the full-time manager of the BEYOND Pedaling location in late 2013/early 2014.

51.     In trying to manage the BEYOND brand, including the BEYOND Marks, Ms. Marino once again approached Defendant Peterson on the issue of BEYOND Pedaling needing a license agreement to use the BEYOND name and BEYOND Marks.  Ms. Marino had her lawyer draw up a license agreement between Go BEYOND and BEYOND Pedaling.  In a meeting in the counsel's office, Defendant Peterson agreed that a license was needed but refused to sign the agreement as presented.   Indeed, to this date, no license agreement has been executed between BEYOND Pedaling or Defendant Peterson and Go BEYOND for any intellectual property related to the BEYOND brand, including any of the BEYOND Marks.

52.     The year 2013 also saw distributions paid by BEYOND Pedaling.  For her hard work and dedication in running the business, training personnel, and directing the marketing and advertising efforts, Ms. Marino received $10,000.00 for her part of the distributions.  Despite being an equal

owner with Ms. Marino and despite having little to do with the actual business of fitness classes and personnel, Defendant Peterson chose to pay herself a disproportionate distribution of $30,000.00, some three (3) times what Ms. Marino received.  When Ms. Marino raised an issue about the unequal distributions, Defendant Peterson responded that her additional distributions resulted from her additional services she rendered to the business and that she was merely receiving a "salary."  Ms. Marino found this to be odd given that Defendant Peterson was not a day-to-day manager of the studio (they had paid managers) and she was still a full-time partner in her law firm with what she claimed was an active practice.  Notably, despite all her activities day-to-day in the business, Ms. Marino never got a single penny in "salary."

53.     On information and belief, putting together the change in the 2013 Franchise Tax Report and Defendant Peterson's unilateral decision to inequitably distribute BEYOND Pedaling's profits to herself (and lie about the reasons), it was apparent in hindsight that Defendant Peterson no longer desired to honor the 50/50 bargain she struck with Ms. Marino in BEYOND Pedaling.  On information and belief, taking the extra $20,000.00 and lying on public records were just the first indications of a much larger and darker plan by Defendant Peterson that would reveal itself in the year to come.

**G.     DEFENDANT PETERSON'S SEIZE AND FREEZE STRATEGY—BEYOND PROBLEMS IN 2014**

54.     Ms. Marino continued work to expand and market the BEYOND-brand of studios in 2014, including the business of BEYOND Pedaling.  All of the BEYOND-branded studios were performing well and Ms. Marino opened a new concept called BEYOND 500 in the Knox-Henderson area of Dallas that offered group fitness classes involving circuit training on treadmills, Pilates chairs, and kettle bells to push the participants to a calorie burn rate of over 500 calories per session.  Once again, the press covered Ms. Marino's new venture and brought recognition to

all the BEYOND-branded studios, including BEYOND Pedaling, further solidifying the association between Ms. Marino, the BEYOND Marks, and BEYOND line of studios and contributing to the consumer's association of the BEYOND Marks with Ms. Marino's and the BEYOND studios' quality and high-level of innovation and service.

55.     Despite the success that BEYOND Pedaling was having through use of the BEYOND brand and Ms. Marino's careful involvement in the service and quality of offerings and customer service, on information and belief, Defendant Peterson had her own plans, and the misdeeds of 2013 proved to be only the start of a campaign by Defendant Peterson to seize control of BEYOND Pedaling and freeze out Ms. Marino from the investment and business she had worked so hard to grow for the past three (3) years.

56.     For instance, Defendant Peterson had traditionally kept the financial books of BEYOND Pedaling and reported results to Ms. Marino.  But in 2014, that changed.  Defendant Peterson maintained the BEYOND Pedaling records on her computer and Ms. Marino began having trouble getting Peterson to give her direct information about the business.  Accordingly, in the Spring of 2014, Ms. Marino requested that Defendant Peterson simply use the on-line version of the software she used to manage the company's records so that she too could have ready access to the records—Defendant Peterson refused citing costs—a dubious excuse given the relative expense of switching to the on-line version.  On information and belief, Defendant Peterson refused Ms. Marino's reasonable request so that Ms. Marino could not see what Defendant Peterson was really doing in managing the financial aspect of the business.

57.     In July 2014, Defendant Peterson once again filed BEYOND Pedaling's Franchise Tax Report with the State of Texas.  In the 2014 version, she not only continued her fraud by listing herself as the only member and a director (a position she never actually had), but actually

eliminated Ms. Marino as the registered agent, choosing instead to list herself.  Ms. Marino was unaware that these untruths were being fed to the state.  On information and belief, Defendant Peterson engaged in these fraudulent filings to give the appearance to the State of Texas and to others who might check the public records, that she alone controlled BEYOND Pedaling—a smokescreen she would later use to abuse the rights of Ms. Marino and completely violate her fiduciary duties to Ms. Marino and BEYOND Pedaling.

58.      Ms. Marino also began to see Defendant Peterson continue her practice from 2013, of making distributions to herself that exceeded those to Ms. Marino, despite a requirement for equal distributions under TEX. BUS. ORG. CODE § 101.201 and .203, given they were equal owners of the business.  Once again, Defendant Peterson tried to play off the unequal distributions as a "salary" for her work for the business, but the BEYOND Pedaling business practice was not to pay salaries to either of the owners and indeed, Ms. Marino never took a salary for the hundreds of hours she put in to the business from its inception through 2014, when Defendant Peterson was a full-time attorney and Ms. Marino brought the business to great success.  On information and belief, in what would become a growing pattern, while Defendant Peterson claimed one thing to Ms. Marino (e.g., "salary") the evidence showed something quite different.  Upon recent examination of the actual checks Defendant Peterson issued to herself, the subject line for every BEYOND Pedaling check issued and cashed by Peterson reads either "3A90225" or "Capital Distributing."  On information and belief, these payments were return of capital and not "salary" as Defendant Peterson claimed and Ms. Marino should have been paid the same amount in distributions.

59.      The following distributions were made by Defendant Peterson who by now had control of BEYOND Pedaling's financial affairs:

| DATE | TO: MARINO | TO: PETERSON |
|---|---|---|
| May 2014 | $5,000.00 | $13,000.00 |
| June 2014 | $5,000.00 | Unknown |
| July 2014 | $2,500.00 | $3,500.00 |
| October 2014 | $0.00 | $5,000.00 |
| November 2014 | $0.00 | $5,000.00 |
| December 2014 | $0.00 | $5,000.00 |
| TOTAL | $12,500.00 | $31,500.00[4] |

60.    Notably, Ms. Marino has not received any distributions from BEYOND Pedaling since the distribution of $2,500.00 in July 2014.  Defendant Peterson, on the other hand, regularly paid herself $5,000.00 a month from October through December 2014, and has paid herself a minimum of $20,000.00 in 2015, from BEYOND Pedaling.  On information and belief, Defendant Peterson has and is also having money paid to her law firm for her benefit.

61.    By June 2014, Ms. Marino was growing more wary of the level of control Defendant Peterson was attempting to exercise over their joint and equal investment in BEYOND Pedaling and Defendant Peterson's continuing refusal to sign a licensing agreement related to the BEYOND Marks and name.  Shortly thereafter, in July, Defendant Howard approached Ms. Marino about gaining access to the internet domain for BEYOND Pedaling (*www.beyondpedaling.com*), which was owned by Ms. Marino and hosted by GoDaddy.  Howard explained that she and Peterson were working to move BEYOND Pedaling to a new POS and online scheduling system and that they needed the client information to make this move.  Ms. Marino refused this request.  Ms. Marino

---

[4] Given that the amount of the June 2014 distribution to Peterson, if any, is unknown, the $31,500.00 total is a minimum, as the actual amount may exceed that figure.

wanted the businesses to continue to share a joint website and POS/online scheduling system to protect the BEYOND Marks, to avoid confusing customers, and to maintain quality and messaging across the BEYOND brand.  Ms. Marino also wanted to safeguard customer information and her investment in BEYOND Pedaling, as she was beginning to grow suspicious of Defendant Peterson. Thus, Ms. Marino informed Peterson and Howard that an executed licensing agreement related to the BEYOND Marks and business was an absolute prerequisite to any discussion of migrating BEYOND Pedaling to its own POS and online scheduling software system.  Defendant Peterson again refused to execute a license and thus, Ms. Marino refused to give her permission for any migration.  Further, on information and belief, there was no reasonable basis for changing domains and incurring additional expenses—and on information and belief, Defendant Peterson had no legitimate business basis on behalf of BEYOND Pedaling for wanting customer information separate and apart from the other BEYOND studio companies.

62.     Rather than work out a business solution or allow the business to continue as it always (and successfully) had, Defendants Peterson and Howard, over the refusal by Ms. Marino and without authority from Go BEYOND to use the BEYOND Marks, on information and belief went their own way hiring POS and online scheduling provider, zingFit, to replicate the BEYOND studios website and make only a color change from the traditional BEYOND blue to the BEYOND Pedaling yellow—all without any authority or permission by Ms. Marino.  Because they did not have access to the BEYOND Pedaling domain name, *www.beyondpedaling.com*, on information and belief Defendants simply purchased a new domain name whose only difference was a dash: *www.beyond-pedaling.com*.  This was all done without the knowledge or consent of Ms. Marino, who subsequently learned about the new BEYOND Pedaling website, with its new domain name, through a group email sent to all customers of the BEYOND studios (which included clients of

BEYOND Park Cities who had never been a BEYOND Pedaling client), essentially notifying BEYOND customers of its new domain name (with the dash in between "beyond" and "pedaling"). On information and belief, on or about that same time, Defendants Peterson and Howard needed access to the Mind Body POS system, which contained all the BEYOND confidential and historical data for its clients.  On information and belief, Defendant Peterson or Howard contacted Mind Body and requested access to the customer information, which prompted Mind Body to contact Ms. Marino and ask whether Ms. Marino would consent to giving the confidential and historical client data to Peterson.  Ms. Marino refused any such consent.  But that did not stop Defendants Peterson and Howard, as they subsequently were able to gain customer email information and, on information and belief, imported the client information for all customers of all BEYOND studios to their newly-created database serving only BEYOND Pedaling without permission by or compensation to Ms. Marino or any BEYOND entity, including BEYOND Pedaling.  On information and belief, the customer data obtained from Mind Body was obtained through misrepresentations by one or more of the Defendants.

63.     The unilateral decisions by Defendants Peterson and Howard to change POS systems over the express refusal by Ms. Marino, create a new and misleading domain name for BEYOND Pedaling, and on information and belief misappropriate confidential customer information immediately changed the booking component for classes at BEYOND Pedaling from the single unified booking entity that was previously serving all the BEYOND-branded studios to one Peterson and Howard could (and Ms. Marino could not) control.  This had two immediate effects: (1) it increased the costs to BEYOND Pedaling; and (2) it gave Defendants Peterson and Howard exclusive control of the booking and customer information on a going-forward basis.  Indeed, Ms. Marino was never given a password by Defendants to access the new system, despite being a half

owner in the business and making numerous requests.  At approximately this same time, Defendant Peterson began refusing all requests by Ms. Marino for financial reports or information about the company.

64.     Thus, by the Fall of 2014, Ms. Marino still had a fifty percent (50%) ownership stake in BEYOND Pedaling, but she had no access to or information from its financial books and records; no access to its website/domain; no access to its customer database/information; and was essentially locked out of the business.  Despite the fact that BEYOND Pedaling's success was built on her ideas, her brand, her intellectual property, her know-how, reputation, and hard-work, Defendant Peterson had effectively frozen out Ms. Marino.  But to what end?  The other shoe would soon drop.

65.     Recognizing that there were extreme difficulties in trying to accomplish the real business purpose of BEYOND Pedaling, Ms. Marino began talking to Defendant Peterson about a buy-out of her interest.  But two (2) points always stopped those discussions short.  First, any buyout of Ms. Marino meant she no longer had oversight of the BEYOND Pedaling business and that meant there had to be a license agreement to BEYOND Pedaling for use of the name and trademarks of Go BEYOND and the BEYOND studios that included a quality control provision, as Ms. Marino was not willing to do a naked license of the name and marks.  Defendant Peterson would not agree. Second, the two (2) owners had to agree upon a price for the buyout.  Ever the lawyer, Defendant Peterson maintained a negotiation posture that the business was worth nothing (of course raising the question of why she was taking it) and that only a return of capital ($75,000) over time would be acceptable.  Ms. Marino had a financial analysis done showing the business to be worth many times the initial capital investment.  Hence, a deal could not be and was not done.

**H.** **DEFENDANTS PETERSON AND HOWARD AND THE BPII PLAN FOR A PLANO, TEXAS LOCATION—BEYOND BELIEF**

66.     Without a word to Ms. Marino and in violation of the legal duties owed to her and BEYOND Pedaling itself, on information and belief by at least the late Fall of 2014, Defendant Peterson and Defendant Howard began actively setting up a new and competing business using BEYOND Pedaling's resources, trade secrets, and confidential information and the BEYOND Marks.   On information and belief, Defendants' intent was to leverage the ongoing business, reputation, assets, and intellectual property of Plaintiffs to launch a venture that cut out Ms. Marino and enrich themselves.

67.     Through the Fall and Winter of 2014 and into the first quarter of 2015, Ms. Marino was unaware of the nefarious activities of Defendants Peterson and Howard, but an April 2015 email was sent to her that left her in disbelief.   The signage company who had previously done signs for advertising at BEYOND-branded studios wanted Ms. Marino to know that they were "ready to be of service for [her] upcoming new location in Plano."   *See* email from D. Gale to B. Marino, dated April 23, 2015, attached hereto as Exhibit H.   Of course, Ms. Marino was caught off guard as she was not aware of any current expansion to Plano by BEYOND Pedaling and certainly had not been consulted on it.   This spurred Ms. Marino to begin further investigation and what she found sickened her.

68.     As it turns out, at some point in the Fall of 2014, Defendants Peterson and Howard had begun negotiating with Retail Properties of America, Inc. and its agent SHOP Concepts, LLC for space to open a new studio for BEYOND Pedaling.   By November 9, 2014, the parties had agreed sufficiently to have a Letter of Intent circulating for a five-year lease with BEYOND Pedaling as the tenant.   A true and correct copy of the Letter of Intent is attached as Exhibit I.   Despite having never raised this issue with Ms. Marino, it appears that Defendants Howard and Peterson had been

planning since the Fall of 2014, to strike out on their own venture, but on information and belief, were intending to steal the good name, good will, and other property of BEYOND Pedaling to create their new business to the exclusion of Ms. Marino and in violation of the duties owed to BEYOND Pedaling and the legal protection afforded to the BEYOND Marks.  The material non-financial terms of the lease were to be:

| | |
|---|---|
| LANDLORD: | Shops at Legacy (Inland) L.P. |
| TENANT: | Beyond Pedaling (Kerry Peterson and Kelsey Howards on behalf of entity TBD entity Lease to personally guarantee the lease) PLEASE PROVIDE FINANCIALS |
| PREMISES: | Approximately 2,027 square feet of retail space shown on Exhibit A. |
| USE: | Tenant shall use the Premises primarily for the operation of a spin studio, and no other use. |
| TERM: | Five (5) Years |

69.     On information and belief, Defendant Howard and/or Peterson were untruthful in what they represented to the leasing agent and landlord about BEYOND Pedaling, the extent of their authority, and the lack of an interest or knowledge by Ms. Marino.  On information and belief, Defendant Peterson and/or Howard provided financials for BEYOND Pedaling with the intent the landlord rely on them in reaching a leasing contract, but with full knowledge that they did not have the ability to use the BEYOND Pedaling name or the BEYOND Marks and that Ms. Marino, who is the face of the BEYOND brand and a major source of goodwill, success, and quality assurance in the market, would be kept out of this new venture by Defendants.  Nevertheless, on information and belief, a lease was signed for the described space in late 2014 or early 2015.

70.     On information and belief, Defendants Howard and Peterson intended to have a new company, BPII, take on the lease and assume the business created out of their theft from BEYOND Pedaling.  This intent was confirmed when in April 2015, counsel for Defendant Peterson

confirmed that Ms. Marino would have "no interest" in the "tenant" at the Plano location.  *See* transcript of voice mail from Attorney R. McCormick to K. Priest Johnson of April 21, 2015, and email from R. McCormick to K. Priest Johnson dated April 21, 2015, attached hereto as <u>Exhibit J</u>.

71.     As it turns out, again, with no notice to Ms. Marino, in March 2015, Defendant Peterson and her law firm formed Defendant BPII, a Texas limited liability company, that on information and belief, Defendant Peterson owns and controls along with Defendant Howard.   A true and correct copy of BBII's Certificate of Formation is attached hereto as <u>Exhibit K</u>.   Neither Ms. Marino nor BEYOND Pedaling have any interest in BPII and BPII has no license or agreement with Go BEYOND for the use of the BEYOND Marks.

72.     In a move that is consistent with the rest of Defendant Peterson's course of dealing, the formation documents for BPII themselves contain misrepresentations and work to injure BEYOND Pedaling, Go BEYOND, and Ms. Marino.   On information and belief, Defendant Peterson knew that the Texas Secretary of State would not allow the formation of a new limited liability company with a name like "BEYOND Pedaling II" because of confusion issues with the existing BEYOND Pedaling, LLC.   On information and belief, Defendant Peterson executed and had another partner at her law firm, Robert McCormick, file with the Texas Secretary of State a document purporting to give BEYOND Pedaling's consent for the use of the BEYOND Pedaling name.  A true and correct copy of signed Consent is attached hereto as <u>Exhibit L</u>.   This document and its purported contents was never authorized by Ms. Marino, the purported authority by Defendant Peterson is false, and it is a material injury to BEYOND Pedaling and a completely self-interested transaction, for Defendant Peterson's new entity to be allowed to use a confusingly similar name.

73.     The final blow leading to this case occurred in April 2015.  On information and belief, while Defendants Howard and Peterson have password-protected access to the BEYOND Pedaling servers and computers, that access is, of course, limited to the purpose of BEYOND Pedaling's business.  The company's servers/computers contain the names and email addresses of almost every customer who has ever been a BEYOND Pedaling customer and indeed, is comprised of a large number of customers that were originally customers of Ms. Marino's BEYOND Park Cities' studios.  This database would also contain the customer's credit card information, as well as information on the customer's buying habits, attendance, etc.  None of this information is public, and BEYOND Pedaling has always and, on information and belief still does, takes steps so that all of the customer information, including the email and other contact information, is maintained as confidential business and trade secret information of BEYOND Pedaling, including maintaining it as password protected.  Similarly, BEYOND Pedaling's Facebook page and other social media, are likewise protected and reserved for use in promoting the business of BEYOND Pedaling.  There has never been, and on information and belief there still is not, a right of access to any of the above information and/or resources for any purposes outside of the business of BEYOND Pedaling.

74.     Beginning on April 12, 2015, postings were made to BEYOND Pedaling's Facebook page stating "We have a BIG announcement … in 7 days!"



75.    What followed was a series of daily pictures and comments on BEYOND Pedaling's Facebook utilizing BEYOND Pedaling's resources, employees, name, and one or more of the BEYOND Marks in these self-made advertisements.  A true and correct copy of the series is attached as Exhibit M.

76.    On April 19, 2015, the following was posted on information and belief by Defendant Peterson and/or Howard to BEYOND Pedaling's Facebook page announcing "a second BEYOND Pedaling location in Plano" and once again using one or more of the BEYOND Marks and confusingly similar names and phrases.



77.    Similarly, Defendants sent or caused to be sent emails on April 19th and April 20th, from Defendant Howard's BEYOND Pedaling email account, emails to BEYOND Pedaling's customer list titled, "We are going BEYOND Dallas" and purportedly announcing a "second BEYOND Pedaling location in Plano at The Shops at Legacy this summer."  True and correct copies of these advertisements are attached hereto as <u>Exhibits N</u> and <u>O</u>.  The ads go to great lengths to make it

appear as though the expansion has a relationship to BEYOND Pedaling and Ms. Marino's
BEYOND-line of studios by using one or more of the BEYOND Marks and stating:

> Thank you to all of our riders, staff, and BEYOND family that have
> supported us over the years and made it possible to take on this
> new adventure. We love the community that has developed at
> Snider, and we look forward to celebrating with you all week long.

78.     Also prominent in the email advertisement for Defendant Peterson and Howard's new
venture are the BEYOND Marks, such as featured in the picture below from the April 20th
communication contained a use of the marks at the supposed "new" Plano location:



79.     This false advertising campaign of course in reality has no relation to the BEYOND-
branded studios or Ms. Marino and is simply a complete fraud on consumers and the existing
customer base of BEYOND Pedaling and the public.   On information and belief, through
unauthorized access and use of the employees, information, computers, trade secrets, and other
confidential business information of BEYOND Pedaling and the unlicensed use of the BEYOND

Marks, Defendants seek to impermissibly gain an unfair advantage in the market for fitness studios and to unfairly and fraudulently create an impression in the mind of consumers that the new venture in Plano has an association with Ms. Marino and her BEYOND line of fitness studios, when, as Defendant Peterson's counsel confirmed as noted above, BEYOND Pedaling will not be the tenant in the new Plano location and Ms. Marino will not have any interest or involvement in the tenant in that location.

80.     The use of the BEYOND Marks and the BEYOND Pedaling name to promote and advertise the new venture of Defendants is wholly unlicensed and illegal. Neither Ms. Marino, Go BEYOND, nor BEYOND Pedaling consented to allow Defendants' wholly self-interested use and access to the property and information of BEYOND Pedaling, Ms. Marino, and/or Go BEYOND.

81.     In addition to Defendants' unauthorized use of BEYOND Pedaling's trademarks, customer list, Facebook page, computers, and other marketing materials, on information and belief Defendants also made a large capital expenditure as they recently purchased new spin bikes for BEYOND Pedaling without any knowledge or consent by Ms. Marino. Defendants made this announcement to all BEYOND Pedaling customers in its April 19th fraudulent email announcement of "BEYOND Pedaling's new location in Plano":

> New Bikes: Good things come to those who sweat. You work hard, and we are rewarding you with all new bikes for our Snider location! We will be replacing all of our current bikes in the upcoming weeks with the brand new Keiser model, and offering a few more seats in each class. You're welcome.
>
> BOOK YOUR BIKE HERE

82.     On information and belief, Defendants intend to use the current spin bikes at BEYOND Pedaling for their own personal benefit at their new venture with BPII.

83.     The actions of Defendants in falsely advertising the new Plano location and illegally using the BEYOND Marks has had a direct effect—the fitness community thinks Ms. Marino is involved and is very confused about the new Plano location's ties to the BEYOND line of studios and Ms. Marino.  While there is a danger of confusion given the common (and illegally used) name and use of the BEYOND Marks, there is also actual confusion in the market.  To wit, Ms. Marino has received multiple inquires and congratulatory expressions over the new Plano location—which of course she's been cut out of and which is illegally and impermissibly using the BEYOND Marks and BEYOND Pedaling's name and resources.

I.    **PLAINTIFF MARINO IS ENTITLED TO SUE INDIVIDUALLY AND/OR DERIVATIVELY FOR INJURY TO BEYOND PEDALING, LLC**

84.     Plaintiff Marino was at all relevant times and is still the sole owner of all right, title, and interest in her fifty percent (50%) membership interest in BEYOND Pedaling, in compliance with Fed. R. Civ. P. 23.1(b) and this action is not a collusive action to confer jurisdiction that the Court would otherwise lack in compliance with Fed. R. Civ. P. 23.1(d)(2).  Defendant Peterson and/or an entity she controls is the holder of all right, title, and interest to the other fifty percent (50%) membership interest in BEYOND Pedaling.  There is no majority owner, no managing member, or other person designated or authorized to act on behalf of BEYOND Pedaling.  As there are only two (2) members in BEYOND Pedaling, it is a closely-held limited liability company under TEX. BUS. ORG. CODE § 101.463(a).

85.     Pursuant to Texas law, demand for action by BEYOND Pedaling prior to instituting a derivative action is not required under TEX. BUS. ORG. CODE § 101.463(b).  Justice requires that given the foregoing acts described herein above and the fact that this is only a two-member limited liability company and the other member is the alleged primary wrongdoer, that the instant action be treated as a direct action by Ms. Marino pursuant to TEX. BUS. ORG. CODE § 101.463(c).

Moreover, since the wrongful acts of Defendant Peterson are the foundation of the claims made in this action, it is clear that a demand directly on BEYOND Pedaling to pursue redress for the claims made herein is futile and thus, that demand is and should be excused, even if it was required.

86.     Accordingly, Plaintiff Marino can pursue the claims made herein directly and in the alternative, derivatively on behalf of BEYOND Pedaling, LLC.

## VI.    CAUSES OF ACTION

### COUNT ONE: Trademark Infringement Under Section 32 of the Lanham Act
### (Go BEYOND against All Defendants)

87.     Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

88.     Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant, any trademark or any reproduction, counterfeit, copy, or colorable imitation thereof in connection with the marketing, advertising, distribution, or sale of goods or services which is likely to result in confusion, mistake, or deception.

89.     The BEYOND Marks are federally registered.  These Marks are inherently distinctive and are associated in the mind of the public with the BEYOND-branded fitness studios and Ms. Marino.

90.     Defendants have used the BEYOND Marks without consent or authorization.  Defendants' use, including the marketing, advertising, and future offers of sale of services in interstate commerce, is likely to cause and has actually caused, confusion and mistake in the mind of the public, leading the public to believe that Defendants' new exercise studio emanates or originates from Ms. Marino, Go BEYOND, and the BEYOND line of studios, or that Ms. Marino, Go

BEYOND, and the BEYOND line of studios has approved, sponsored, or otherwise associated themselves with Defendants or their infringing services.

91.     Through their unauthorized use of the BEYOND Marks, Defendants are unfairly benefiting from Go BEYOND, Ms. Marino, and her BEYOND line of studios' goodwill and reputation, as well as the fame of the BEYOND Marks.  This has resulted in substantial and irreparable injury to the public, Go BEYOND, and to Ms. Marino.

92.     Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and were willfully committed.

93.     Defendants' acts have caused, and will continue to cause, irreparable injury to Go BEYOND, Ms. Marino, and her BEYOND line of studios.  Go BEYOND has no adequate remedy at law and is thus damaged in an amount not yet determined.

**COUNT TWO: False Designations of Origin and False Descriptions and Representations Under Section 43(a) of the Lanham Act**
**(Marino Individually and/or Derivatively and Go BEYOND Against All Defendants)**

94.     Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

95.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits, *inter alia*, the use by a person of a false or misleading designation of origin or representation in connection with the offering for sale and sale of goods or services which is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of such person with another person, or which is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, or approval of such goods.

96.     As a result of Go BEYOND's, Ms. Marino's, and her BEYOND line of studios' experience, care, and service in producing and providing genuine BEYOND-branded products and

services, these products and services have become widely known and have acquired a reputation for excellence.  Moreover, the BEYOND Marks have become uniquely associated with Ms. Marino, Go BEYOND, and the BEYOND line of fitness studios, and have come to symbolize the reputation for quality, experience, and service associated with Ms. Marino, her BEYOND line of studios, and BEYOND-branded merchandise.  As such, the BEYOND Marks have acquired secondary meaning.  The BEYOND Marks are also inherently distinctive.

97.     By making unauthorized use in interstate commerce of the BEYOND Marks and the BEYOND Pedaling name, Defendants have used false designations of origin and false representations in connection with the advertising, promotion, and/or offering for sale of services that are likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Go BEYOND, Ms. Marino, and her BEYOND line of studios, including BEYOND Pedaling, and as to the origin, sponsorship, association, or approval of Defendants' services by Go BEYOND, Ms. Marino, and her BEYOND line of studios, including BEYOND Pedaling, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

98.     Defendants' wrongful acts will continue unless enjoined by this Court.

99.     Defendants' acts have caused, and will continue to cause, irreparable injury to Ms. Marino, Go BEYOND, and BEYOND Pedaling.  Plaintiffs have no adequate remedy at law and are thus damaged in an amount not yet determined.

<b>COUNT THREE: Trademark Infringement Under Texas Common Law<br>(<u>Marino and Go BEYOND Against All Defendants</u>)</b>

100.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

101.    By the acts described above, Defendants have engaged in trademark infringement in violation of the common law of the State of Texas.

102.   Defendants' acts have caused, and will continue to cause, irreparable injury to Ms. Marino and Go BEYOND.  Go BEYOND and Ms. Marino have no adequate remedy at law and are thus damaged in an amount not yet determined.

### COUNT FOUR: Breach of Fiduciary Duty/Duty of Loyalty/Duty of Care
### (<u>Marino Individually and Derivatively Against Peterson and Howard Only</u>)

103.   Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

104.   BEYOND Pedaling is a closely-held limited liability company under Texas law.  As one (1) of only two (2) BEYOND Pedaling members (and there being no Managing Member such that the limited liability company is member managed) and/or as the holder of fifty percent (50%) membership interest, and/or in or around 2013 and thereafter, having taken on (albeit it without request, authority, or consent from Ms. Marino) a role in managing the business affairs of BEYOND Pedaling, Defendant Peterson owed fiduciary duties, including duties of loyalty, candor, and care to BEYOND Pedaling and Ms. Marino.  These duties included, but were not limited to: that Peterson act in the best interest of Ms. Marino and/or BEYOND Pedaling; that Peterson not act in the interest of an existing or potential new competitor of BEYOND Pedaling; that Peterson not attempt to induce BEYOND Pedaling employees to leave or act against the interest of BEYOND Pedaling and/or Ms. Marino; that Peterson not take for herself any business opportunity within the general scope of BEYOND Pedaling's business; and that Peterson not use BEYOND Pedaling's time, property, employees, or resources to achieve her own objectives, including, but not limited to, setting up a competing business.

105.   On information and belief Peterson breached those duties of loyalty and care by, while acting in the capacities described above in at least the following ways:  taking and/or using BEYOND Pedaling's trade secrets and confidential and proprietary information; usurping a

corporate opportunity for the benefit of herself and, on information and belief, a new direct competitor, BPII; publishing and/or causing or conspiring with others to cause the publishing of false information regarding BEYOND Pedaling's business expanding to Plano and thereby attempting to trade on the good will and reputation of BEYOND Pedaling, Ms. Marino, and the other BEYOND-branded studios; failing to provide timely and accurate financial information about the BEYOND Pedaling business to Ms. Marino and indeed keeping information from her; providing herself with improper monetary payments and other benefits at the expense of BEYOND Pedaling; soliciting BEYOND Pedaling employees to work against the interest of BEYOND Pedaling; using BEYOND Pedaling's time, employees, and resources to plan and execute a new business in Plano, Texas.

106.    As BEYOND Pedaling's manager and its senior-most employee at its only location, Howard owed a duty of loyalty and a duty of care to BEYOND Pedaling.  These duties included, but were not limited to: that Howard act in BEYOND Pedaling's best interest and not her own; that Howard not act in the interest of an existing or new emerging competitor of BEYOND Pedaling; and that Howard not use BEYOND Pedaling's time or resources to achieve a new competitive business.

107.    On information and belief Howard breached those duties of loyalty and care by, while still employed by BEYOND Pedaling in at least the following ways:  taking and using BEYOND Pedaling's trade secrets and confidential and proprietary information for the benefit of herself and/or a new/emerging direct competitor, publishing and/or causing or conspiring with others to cause the publishing of false information regarding BEYOND Pedaling's business expanding to Plano, and thereby attempting to trade on the good will and reputation of BEYOND Pedaling, Ms.

Marino, and the other BEYOND-branded studios, and using BEYOND Pedaling's time and resources for the benefit of herself and/or a new direct competitor.

108.    BEYOND Pedaling has suffered harm and damages as a result of Peterson's and Howard's breaches, including, but not limited to, wages BEYOND Pedaling paid to Howard and alleged salary and/or distributions and/or other direct or indirect monetary benefits Peterson may have caused BEYOND Pedaling to pay to her, while both Defendants were disloyal, and other damages in an amount to be determined at trial.

109.    Ms. Marino and/or BEYOND Pedaling has suffered harm and damages as a result of Peterson's breaches in an amount to be determined at trial.

110.    On information and belief, Peterson's and Howard's acts and conduct that constitute a breach of their fiduciary duty, duty of loyalty, and duty of care were carried out willfully, fraudulently, maliciously, and with a wanton disregard of BEYOND Pedaling's and/or Ms. Marino's rights, thereby entitling Plaintiffs to punitive damages to be proven at trial.

### COUNT FIVE: Aiding and Abetting Breach Of Fiduciary Duty/Duty of Loyalty
### (<u>Marino Individually and Derivatively Against Peterson and Howard</u>)

111.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

112.    On information and belief Peterson knew that Howard was the sole and senior manager of BEYOND Pedaling's only studio and that Howard owed duties of loyalty, care, and candor to BEYOND Pedaling.  This duty included, but was not limited to: that Howard act in BEYOND Pedaling's best interest; that Howard not act in the interest of herself or a competitor (actual or emerging/new) of BEYOND Pedaling; and that Howard not use BEYOND Pedaling's time or resources to achieve her own competitive business or that of Peterson or a competitor.

113.     Nevertheless, on information and belief Peterson knowingly participated in Howard's breach of her fiduciary duty and duty of loyalty by encouraging her to engage in activities noted herein above, including, but not limited to, use of BEYOND Pedaling's time and resources for the benefit of Defendants, to misappropriate BEYOND Pedaling's trade secrets and other confidential and proprietary information, and to act in the interest of Defendants rather than BEYOND Pedaling.

114.     Similarly, on information and belief, Howard knew that Peterson was one (1) of only two (2) BEYOND Pedaling members (and there being no Managing Member such that the limited liability company is member managed) and/or as the holder of fifty percent (50%) membership interest, and/or having taken a role in managing the financial affairs of BEYOND Pedaling, that Peterson owed a duty of loyalty to BEYOND Pedaling and/or Ms. Marino.  This duty included, but was not limited to: that Peterson act in BEYOND Pedaling's and/or Ms. Marino's best interest; that Peterson not act in the interest of herself or a competitor (actual or emerging/new) of BEYOND Pedaling; and that Peterson not use BEYOND Pedaling's time, employees, or resources to achieve her own competitive business or that of Howard or a competitor.

115.     Nevertheless, on information and belief, Howard knowingly participated in Peterson's breach of her fiduciary duty and duty of loyalty by encouraging her to engage in activities noted hereinabove, including, but not limited to, use of BEYOND Pedaling's time and resources for the benefit of Defendants, to misappropriate BEYOND Pedaling's trade secrets and other confidential and proprietary information, and to act in the interest of Defendants rather than BEYOND Pedaling and/or Ms. Marino.

116.     BEYOND Pedaling and/or Ms. Marino have suffered harm and damages as a result of Howard's and Peterson's improper conduct for which Plaintiffs may recover.   In addition,

Howard's and Peterson's improper actions warrant the imposition of exemplary damages because on information and belief they were willful, intentional, and performed with malice.

### COUNT SIX: Violation of the Texas Uniform Trade Secret Act
### TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001-134A.008
### (<u>Marino Individually and Derivatively Against All Defendants</u>)

117.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

118.    BEYOND Pedaling has invested and on information and belief continues to invest substantial resources into developing its customer base and (actual and prospective) customer information, including contact information and buying/attendance habits (*e.g.*, its customer list).

119.    The information BEYOND Pedaling compiles and maintains in connection to its sales and strategy includes, but is not limited to, its current and prospective customers, results of marketing efforts and/or campaigns, and its customer lists and related contact information.

120.    Because this information that BEYOND Pedaling gains from its efforts, research, and relationships has tremendous market value and is critical to its success, this information is non-public and BEYOND Pedaling has taken and, on information and belief still takes, efforts to keep this information confidential from its competitors.

121.    BEYOND Pedaling takes, and at all times relevant here, has taken reasonable efforts to maintain the secrecy of this confidential information—as discussed above, the information is stored on servers that are password protected and BEYOND Pedaling's computers are password protected.  Further, this information is not circulated external to BEYOND Pedaling.  Moreover, BEYOND Pedaling has purchased and on information and belief maintains current commercial computer network security products and services.

122.    The efforts BEYOND Pedaling takes to keep confidential this information relating to its sales strategies and actual and prospective customers are reasonable under the circumstances to maintain its secrecy.  BEYOND Pedaling takes these measures to ensure the confidentiality of this information because this information derives independent economic value from not being generally known to BEYOND Pedaling's existing or potential new competitors in the market like BPII.  BEYOND Pedaling's existing or potential new competitors like BPII, in turn, would obtain economic value from the disclosure or use of BEYOND Pedaling's information relating to its sales strategies and customers.  This information effectively provides Defendants with a ready-made roadmap of who uses or is likely to utilize spin-bike studio services, what prices they pay, and information that is useful in developing strategies on how to convince BEYOND Pedaling's current and projected customers to change their business to BPII and the contact information to do so.

123.    As the owner of fifty percent (50%) membership interest in BEYOND Pedaling and knowing that the company was a member-managed limited liability company, Defendant Peterson acquired knowledge and custody of substantial trade secrets related to BEYOND Pedaling's sales and marketing efforts and customers.  Defendant Peterson knew or had reason to know that her knowledge of BEYOND Pedaling's trade secrets was acquired under a circumstance giving rise to a duty to maintain the secrecy of those trade secrets or limit their use.  Based on facts herein, Peterson has misappropriated BEYOND Pedaling's trade secrets by using and/or disclosing them to BPII and perhaps others in an attempt to gain a competitive advantage over BEYOND Pedaling and to further the monetary interests of Defendants Peterson, Howard, and BPII.

124.    As the sole manager of BEYOND Pedaling's business location and its day-to-day efforts with customers, Defendant Howard acquired knowledge and custody of substantial trade secrets

related to BEYOND Pedaling's sales efforts and customers.  Defendant Peterson knew or had reason to know that her knowledge of BEYOND Pedaling's trade secrets was acquired under a circumstance giving rise to a duty to maintain the secrecy of those trade secrets or limit their use. Based on facts herein, Howard has misappropriated BEYOND Pedaling's trade secrets by using and/or disclosing them to BPII and perhaps others in an attempt to gain a competitive advantage over BEYOND Pedaling and to further the monetary interests of Defendants Howard, Peterson, and BPII.

125.    BEYOND Pedaling and/or Ms. Marino owns all right, title, and interest to its trade secrets and other confidential and proprietary information.

126.    As discussed above, Defendants obtained BEYOND Pedaling's trade secrets and other confidential and proprietary information by improper means, including, but on information and belief, not limited to, when Defendants Peterson and/or Howard exceeded their proper access rights to BEYOND Pedaling's servers and computers and financial data and/or began transmitting the information to and converting it for use by and in the business of BPII.

127.    As a result of Defendant Howard's and Peterson's unlawful conduct, BPII and its employees and agents including, but not limited to, Peterson and/or Howard, acquired BEYOND Pedaling's trade secrets and other confidential and proprietary information through improper means.

128.    As discussed above, BPII employees and agents, including, but not limited to, Defendants Peterson and Howard, had knowledge and/or notice that they were in the possession of BEYOND Pedaling's trade secrets and other confidential and proprietary information, and that this information had been obtained through improper means.

129.    Upon information and belief, Defendants used and are using BEYOND Pedaling's trade secrets and other confidential and proprietary information without BEYOND Pedaling's authorization, and to Defendants' commercial advantage.

130.    BEYOND Pedaling and/or Ms. Marino has suffered and continues to suffer damages which cannot be quantified at this time.

131.    Each of the acts of misappropriation was done willfully and maliciously by Defendants, thereby entitling BEYOND Pedaling to exemplary damages to be proved at trial.

132.    As a direct and proximate result of Defendants' misappropriation of BEYOND Pedaling's trade secrets, BEYOND Pedaling and/or Ms. Marino has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further such acts of misappropriation and/or use of such information.  Moreover, Defendants have been unjustly enriched and BEYOND Pedaling and/or Ms. Marino has sustained damages in an amount to be proven at trial.

## COUNT SEVEN: Cyberpiracy Under 15 U.S.C. §1125(d)
## (<u>Go BEYOND Against All Defendants</u>)

133.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

134.    The Lanham Act, 15 U.S.C. § 1125(d), prohibits, *inter alia*, the use by a person of a mark in bad faith with the intent to profit, to register, or use a domain name that is identical or confusingly similar to the mark.

135.    Go BEYOND is the sole owner of the BEYOND Marks.

136.    On information and belief, one (1) or more of Defendants registered and/or is using the domain *www.beyond-pedaling.com*, which utilizes and/or is confusingly similar to the BEYOND

Marks.  On information and belief, Defendants' registration and/or use was and is done in bad faith with the intent to profit for themselves.

137.    Defendants' wrongful acts will continue unless enjoined by this Court.

138.    Defendants' acts have caused, and will continue to cause, irreparable injury to Go BEYOND.  Go BEYOND has no adequate remedy at law and is thus damaged in an amount not yet determined.

**COUNT EIGHT: Violation of the Computer Fraud & Abuse Act**
**18 U.S.C. § 1030**
**(<u>Marino Individually and Derivatively Against All Defendants</u>)**

139.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

140.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing a computer used for interstate commerce or communication without authorization and by exceeding authorized access to such a computer and by obtaining information from such a protected computer, and so causing significant damage.

141.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by knowingly and with the intent to defraud BEYOND Pedaling and Ms. Marino, without authorization and/or by exceeding authorized access to such a computer and by means of such conduct, furthered their intended fraud and obtained one or more things of value, including, but not limited to, BEYOND Pedaling's customer lists, contact information, and sales and marketing information, as well as similar information from Ms. Marino and the other BEYOND studios.

142.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by intentionally accessing a protected computer beyond the scope of the authorization granted,

causing damage to BEYOND Pedaling and/or Ms. Marino, recklessly, or without due regard for their actions.

143.    The computer system or systems that Defendants accessed as described above constitute a "Protected Computer" within the meaning of 18 U.S.C. § 1030(e)(2).

144.    The Defendants individually and/or as part of a joint conspiracy with the meaning of 18 U.S.C. § 1030 committed the violations complained of herein.

145.    BEYOND Pedaling and/or Ms. Marino has been harmed by these violations in an amount to be determined at trial.

146.    Defendants' unlawful access to and misappropriation from Ms. Marino's and/or BEYOND Pedaling's computers also has caused and will continue to cause irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such acts and will continue to misuse the information of BEYOND Pedaling and/or Ms. Marino in the building of a competing business and/or otherwise.  Damages are not adequate to compensate BEYOND Pedaling and/or Ms. Marino for these actual and threatened injuries; therefore, BEYOND Pedaling and/or Ms. Marino is entitled to injunctive relief under 18 U.S.C. § 1030(g).

## COUNT NINE: Unfair Competition Under Common Law
### (<u>Marino Individually and Derivatively Against All Defendants</u>)

147.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

148.    By the acts described above, Defendants have intentionally used and benefited from the goodwill and reputation earned by Ms. Marino and her BEYOND line of studios, as well as BEYOND Pedaling.

149.    Defendants' willful, intentional, and illegal acts, as alleged in this Complaint, have interfered and will interfere with Ms. Marino's and BEYOND Pedaling's ability to conduct

business, and constitute unfair competition and misappropriation in violation of the common law of the State of Texas.

150.    Defendants' willful, intentional, and illegal acts have caused, and will continue to cause, injury, including irreparable injury to Plaintiffs.  Plaintiffs have no adequate remedy at law and are thus damaged in an amount not yet determined.  In addition, Defendants' actions warrant the imposition of exemplary damages because they were willful, intentional, and performed with malice.

### COUNT TEN: Conversion
### (Marino Individually and Derivatively Against All Defendants)

151.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

152.    The acts described above constitute conversion in that Defendants have without authorization, assumed and exercised the right of ownership over confidential and proprietary information and trade secrets belonging to BEYOND Pedaling to the exclusion of BEYOND Pedaling's rights.

153.    The acts described above were committed by Defendants with malice and in bad faith.

154.    As a direct and proximate result of the conduct of Defendants, BEYOND Pedaling has been greatly damaged.  BEYOND Pedaling has suffered irreparable harm as a result of the conversion by Defendants of its property and will continue to suffer irreparable harm unless Defendants are enjoined from continuing to possess and to use BEYOND Pedaling's property.

### COUNT ELEVEN: Direct and Vicarious Liability and Conspiracy – All Counts
### (Plaintiffs Against Defendants Peterson and Howard)

155.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

156.     On information and belief, Defendants Peterson and/or Howard are owners and/or are the co-owners and/or co-operators and/or co-managing agents of BPII, and are responsible for the management of BPII, including strategic planning, sales, marketing, and advertising for BPII and arranging for marketing efforts on behalf of BPII that utilized the trademarks, trade secrets, resources, and other confidential business information of Go BEYOND, BEYOND Pedaling, and/or Ms. Marino.

157.     On information and belief, at all relevant times, Defendants Howard and/or Peterson had the ability and right to supervise, direct, and control the infringing and illegal activities alleged in this Complaint related to BPII.

158.     On information and belief, Defendants Peterson and/or Howard are the moving, active, and conscious force behind the unlawful acts complained of herein because they actively directed, controlled, ratified, facilitated, and otherwise substantially participated in the activities complained of herein for BPII.

159.     On information and belief, Defendants Peterson and/or Howard have received and/or are intending to receive direct financial benefits from the activities alleged in this Complaint related to BPII.

160.     On information and belief, Defendants Peterson and Howard are jointly and severally liable with BPII under all counts of the Complaint.

161.     On information and belief, Defendants Howard and Peterson have intentionally induced BPII to counterfeit and/or infringe the BEYOND Marks and to engage in the other actions complained of herein.

162.    On information and belief, Defendants Peterson and Howard, through their actions as principals of BPII are directly, vicariously, and contributory liable for all acts of infringement and other violations of law alleged in this Complaint.

163.    On information and belief, Defendants Howard and/or Peterson and/or BPII agreed upon an objective of setting up a commercial venture offering the same or substantially similar services as BEYOND Pedaling to, among other things, profit themselves and steal the business of BEYOND Pedaling and/or to use the name, reputation, resources, property, and goodwill of Ms. Marino, Go BEYOND, the BEYOND line of studios, and/or BEYOND Pedaling to do so.  On information and belief, Defendants Howard and/or Peterson committed one or more unlawful, overt act in furtherance of this agreed objective as described in this Complaint, including, but not limited to, the sending of advertisements claiming that BEYOND Pedaling was opening a new location at The Shops at Legacy in Plano, Collin County, Texas, and/or sending such advertisement utilizing the property, trade secrets, and confidential business information of BEYOND Pedaling and the BEYOND Marks.

164.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiffs. Plaintiffs have no adequate remedy at law and are thus damaged in an amount not yet determined.

165.    Defendants Howard and/or Peterson and/or BPII are thus jointly liable as co-conspirators for all acts and omissions alleged in this Complaint.

**COUNT TWELVE: Request for Writ to Compel Inspection**
**of Business Records Pursuant to TEX. BUS. ORG. CODE § 101.502**
**(<u>Marino Individually Against Defendant Peterson</u>)**

166.    On April 21, 2015, counsel for Ms. Marino delivered to Defendant Peterson through her counsel, as a fifty percent (50%) member of BEYOND Pedaling and the custodian of its books and records, a written request for inspection of BEYOND Pedaling's books and records of account

and all other documents evidencing BEYOND Pedaling's financial condition.  A true and correct

copy of this request is attached as Exhibit P and incorporated by reference the same as if fully

copied and set forth at length.  As indicated in Exhibit P, Ms. Marino requested permission to

inspect those records within a reasonable time.  As further indicated in the demand, Ms. Marino's

purpose in seeking the inspection is because she has not been given access to the financial

information for BEYOND Pedaling for the third and fourth quarters of 2014 and all of 2015, and

she has not seen or had any access to the final end-of-year financials for BEYOND Pedaling for

2014.  Such an inspection is necessary to ascertain how assets of BEYOND Pedaling have been

distributed and allocated and whether Defendant Peterson has acted in the best interest of

BEYOND Pedaling.

167.    Defendant Peterson refused to allow the inspection as requested by Ms. Marino, and

Defendant Peterson continues to refuse Ms. Marino's repeated requests in violation of TEX. BUS.

ORG. CODE § 101.502.

168.    Ms. Marino has no other adequate remedy to compel Defendant Peterson to permit

inspection of BEYOND Pedaling's books and records.  Therefore, Ms. Marino requests that

Defendant Peterson be cited to appear and answer; and that on final hearing, the Court issue a writ

of mandamus ordering Defendant Peterson to allow Ms. Marino or Ms. Marino's designated

representative to inspect the books, records, minutes, and documents of BEYOND Pedaling, and

to make copies from those records.  Ms. Marino further requests that the Court grant Ms. Marino

such other and further relief to which she may be entitled.

## COUNT THIRTEEN: Application for Temporary Restraining Order, Temporary, and Permanent Injunctions
## (<u>Go BEYOND and Marino Individually and Derivatively Against All Defendants</u>)

169.    Plaintiffs hereby re-allege and incorporate by reference each of the paragraphs of this Complaint, as though fully set forth herein.

170.    Go BEYOND, as well as Ms. Marino individually and on behalf of BEYOND Pedaling, seek a temporary restraining order and temporary injunctive relief under Fed. R. Civ. P. 65.

171.    As demonstrated by this Complaint, Ms. Marino, BEYOND Pedaling, and Go BEYOND have a probable right of recovery in this action.  In addition, Ms. Marino, BEYOND Pedaling and Go BEYOND are suffering, and will continue to suffer, immediate and irreparable harm to their business as a result of Defendants' unlawful conduct because Defendants are using the BEYOND Marks without a license or permission in advertising and setting up a fitness studio business in Plano, Texas, which is advertised to open in less than one month.   Further, immediate and irreparable harm is and will be caused as Defendants are, without permission and in violation of their legal duties, using the same name as BEYOND Pedaling and are in possession of and are using BEYOND Pedaling's employees, resources, Facebook page, as well as trade secrets and other confidential and proprietary information that Defendants have illegally obtained through accessing, without authorization, trade secret documents and information to set and market their new venture.  Defendants have taken these actions to gain an unfair advantage in the marketplace with existing and future business of BEYOND Pedaling and the business and property of Go BEYOND.   Finally, the total damages caused by Defendants' unlawful conduct are not readily quantifiable or measurable and will likely be unrecoverable if Defendants are permitted to continue their unlawful conduct before a hearing and trial on this matter.

172.    The threatened damage to BEYOND Pedaling and Go BEYOND occasioned by Defendants' unlawful conduct outweighs any potential damages to Defendants of a temporary restraining order or injunctive relief.  Defendants have engaged in unlawful activities that have given them a distinct, immediate, and unfair commercial advantage to Plaintiffs' detriment and to the detriment of the public via use of the materials and resources described above, including, but not limited to, the BEYOND Marks.  Defendants' *legitimate* business activities, if any, will not be affected by the entry of a temporary restraining order or temporary injunction.  Indeed, the terms of the temporary injunction demand not much more than that Defendants comply with state and federal law and their fiduciary obligations to BEYOND Pedaling—including not paying disparate distributions to one member over another in violation of TEX. BUS. ORG. CODE §§ 101.201 and 101.203.

173.    The requested injunctive relief is not adverse to the public interest.  The public has an interest in a competitive marketplace that is fostered by innovation and development that is fairly obtained.  The public likewise has a direct interest in the use and prevention of misuse of trademarks, as the marks, by their distinctive nature provide the public with an identifiable source of the goods and services, and assurances of an expected level of quality and character of the good or service bearing the mark that is not assured or even present where the mark is allowed to be used absent careful oversight by its owner or in services and merchandise the owner has no involvement with.  Defendants have not developed their own formula for commercial success; instead, they have used valuable property belonging to Ms. Marino, BEYOND Pedaling and Go BEYOND, namely Ms. Marino's and/or BEYOND Pedaling's trade secrets, business reputation, Facebook page, email servers and accounts, and employees, and have used the BEYOND Marks of Go BEYOND, as well as other confidential and proprietary information.  Defendants have

engaged in anti-competitive behavior to Ms. Marino's and BEYOND Pedaling's business and consequently the public's detriment.

174.    Defendants announced intent is to open a cycling studio in Plano, Collin County, Texas under the BEYOND Pedaling name and the BEYOND brand, using the BEYOND Marks by June 2015.  Unless immediately restrained, they will continue to utilize the property and resources of Plaintiffs to publicly promote (to existing BEYOND Pedaling customers, other BEYOND studios' customers, and prospective customers) this competing venture and continue to misinform and defraud the public by creating confusion that the location in Plano has anything to do with BEYOND Pedaling, Go BEYOND, and the BEYOND-brand of fitness studios, or Ms. Marino (who, as the Court can see, is a part of the BEYOND reputation and the market's expectation of the BEYOND-branded fitness studios).  Likewise, they will continue to build this competitive venture while still employed by BEYOND Pedaling (in the case of Defendant Howard) and owing fiduciary duties to BEYOND Pedaling (in the case of Defendant Peterson).

175.    Defendant Peterson has had a propensity for paying herself distributions without complying with the law regarding limited liability company distributions being made to all members in accordance with their ownership interests and capital contributions.  Moreover, Peterson has paid her law firm for alleged services provided to Peterson out of BEYOND Pedaling.  Unless immediately restrained, she will continue these improper payments to herself or her law firm to the detriment of BEYOND Pedaling's compliance with applicable Texas law and its financial future, as well as that of the other fifty-percent (50%) owner, Ms. Marino.

176.    Plaintiffs request that the Court grant them a temporary restraining order and temporary injunction pending a trial on the merits to prevent Defendants BPII, Peterson, Howard, and all

persons acting in concert or participation with Defendants, or acting on their behalf or at their direction from:

a.      Use of the BEYOND Marks in any manner whatsoever in relation to the cycling studio planned for The Shops at Legacy in Collin County, Texas, including removal of all such existing references on any existing advertising, marketing, or other communications, including, but not limited to, social media such as Facebook, Twitter, or Instagram;

b.      Use of the BEYOND Marks in any manner outside the promotion and for the business of BEYOND Pedaling during the time of Ms. Marino's ownership and oversight thereof;

c.      Use or possession of the property and resources of BEYOND Pedaling, including, but not limited to, money, financial reports, customer lists, customer contact information, employees, business plans, business strategies, marketing information, social media sites, internet domains or websites for planning, promotion, communication, advertising, setting up, running, or marketing, or in any way aiding in the setting up, promotion, or running of any cycling studio or other venture similar to BEYOND Pedaling;

d.      Communicating or informing in any manner to anyone, directly or indirectly, that the cycling studio planned for The Shops at Legacy is in any way associated with BEYOND Pedaling, the BEYOND Marks, the BEYOND-branded line of fitness studios, or Ms. Marino;

e.      Payment of any distributions from BEYOND Pedaling directly or indirectly to Defendant Peterson without a corresponding amount being paid to Ms. Marino;

f.      Payment to Defendant Peterson's law firm or any other attorney and/or law firm for legal services rendered to Defendants;

g.      Incurring expenses on behalf of BEYOND Pedaling that are in fact directly or indirectly for the personal benefit of Defendants or the new cycling studio planned for The Shops at Legacy; and

h.      Destroying, altering, or in any way effecting the existing financial and/or business records of BEYOND Pedaling or Defendants personal or business records, including those records existing on any computer accessed or used by a Defendant or someone on their behalf, and including email accounts, text messages, or information therein.

177.   The Court should further order mandatory injunction requiring Defendant Peterson to provide an "Accountants Copy" of the QuickBooks for BEYOND Pedaling for 2014 and through April 2015, in digital format to counsel for Plaintiffs within twenty-four (24) hours of the issuance of the restraining order.

178.   To aid in the injunction hearing in this matter, the Court should likewise grant expedited discovery between the parties to include:

   a.      a Rule 30(b)(6) deposition of each entity and/or a deposition of each individual party named not to exceed seven (7) hours;

   b.      issuance and response to no more than twenty (20) requests for documents per side with the responses to which, including production of actual responsive documents shall be due in eleven (11) days from the date of service;

   c.      seven (7) interrogatories per side with the responses to which, shall be due in eleven (11) days) from the date of service;

   d.      ten (10) requests for admission per side;

   e.      three (3) third-party depositions with accompanying document requests of no more than ten (10) requests, per side not to exceed six (6) hours with the time to be divided equally between the sides and the document requests, if any, to be responded to and documents produced within eleven (11) days of receipt of the deposition notice and subpoena duces tecum; and

   f.      disclosures of any witnesses to be used at the injunction hearing in this matter no less than seven (7) days before the hearing with each witness listed who has not been deposed being subject to two (2) hours of deposition by the non-calling side prior to the witness taking the stand.

179.   Following a hearing and briefing, that the Court issue a temporary injunction of the same scope as the temporary restraining order unless justice and the facts require a broader or narrower order; and

180.   Following a trial of this matter, that the Court issue a permanent injunction of the same scope as the temporary injunction, unless justice and the facts require a broader or narrower order.

## VII.   <u>PRAYER FOR RELIEF</u>

181.   Plaintiffs respectfully pray that the Court:

a.   Grant Plaintiffs the temporary restraining order requested hereinabove;

b.   Grant Plaintiffs the expedited discovery requested herein above;

c.   Grant Plaintiffs a temporary injunction requested hereinabove;

d.   Grant Plaintiffs a writ compelling Defendant Peterson to comply with TEX. BUS. ORG. CODE § 101.502(a), and grant inspection and copying of business records and financial records of BEYOND Pedaling, including, but not limited to, the data in the QuickBooks software or other software she uses to manage the finances of BEYOND Pedaling;

e.   Enter a judgment against each Defendant on each count of this Complaint that is asserted against each Defendant;

f.   Award Plaintiffs actual, consequential, exemplary, and punitive damages;

g.   Award Plaintiffs their attorneys' fees necessary in prosecuting this action;

h.   Award Plaintiffs pre- and post-judgment interest at the highest rate allowable by law;

i.   Award Plaintiffs their costs of court; and

j.   Grant Plaintiffs such further and additional relief to which they may be entitled.

Dated: May 6, 2015

Respectfully submitted,

**PRIEST JOHNSON LAW, PLLC**

By: _/s/ Kimberly C. Priest Johnson_
    Kimberly C. Priest Johnson
    Texas State Bar No. 24027753
    kpj@priestjohnsonlaw.com
    400 N. Ervay St., Ste. 150
    Dallas, Texas 75201
    Telephone: (214) 720-4000
    Facsimile: (214) 723-7652

    **FISH & RICHARDSON P.C.**
    Natalie L. Arbaugh
    State Bar No. 24033378
    arbaugh@fr.com
    Michael Brett Johnson
    State Bar No. 00790975
    johnson@fr.com
    1717 Main Street, Ste. 5000
    Dallas, Texas 75201
    (214) 747-5070 Main
    (214) 747-2091 Fax

    **ATTORNEYS FOR PLAINTIFFS**

## VERIFICATION

STATE OF TEXAS      §
                                §
COUNTY OF DALLAS    §

BEFORE ME, the undersigned authority, on this day personally appeared Brandi Marino, who, being by me first duly sworn, deposed and said that she has read the allegations in the foregoing Complaint and Applications for Temporary Restraining Order and Temporary and Permanent Injunctions, and each and every fact and matter therein stated, except those made on information and belief, is within her personal knowledge and is true and correct.

_____
Brandi Marino

SUBSCRIBED and SWORN to before me this ___6___ day of May 2015.

_____
Notary Public in and for the State of Texas

MIKE L. HILL
MY COMMISSION EXPIRES
June 10, 2016